**RAILROAD VENTURES,
INC., Petitioner,**

v.

**SURFACE TRANSPORTATION
BOARD; United States of
America, Respondents,**

Columbiana County Port Authority;
Central Columbiana & Pennsylvania Railway Inc., Intervenors.

No. 01–4262.

United States Court of Appeals,
Sixth Circuit.

June 4, 2003.

Before SUHRHEINRICH and COLE, Circuit Judges; and CARR, District Judge.*

PER CURIAM.

Petitioner Railroad Ventures, Inc. ("RVI") seeks review of a November 8, 2001 order of the Surface Transportation Board (the "Board"), which, among other things, modified an existing escrow arrangement established by the Board and clarified property interests transferred from RVI to intervenor Columbiana County Port Authority ("CCPA") in the forced sale of an abandoned rail line from RVI to CCPA. RVI now argues that the Board violated its due process rights when the Board modified the existing escrow arrangement, and that the forced transfer of ninety-six license agreements associated with the rail line, allegedly without compensation to RVI, constitutes an unconstitutional taking in violation of the Fifth Amendment. We decline to consider RVI's challenge to the modification of the escrow arrangement because it is not ripe for appellate review. Because we find that RVI is not entitled to additional compensation for the ninety-six license agreements, we affirm the Board's November 8, 2001 order regarding the transfer of those agreements.

## I. Background

The events leading up to this appeal have been the subject of a series of decisions concerning a Board order that forced RVI to sell its property interest in a 35.7–mile rail line to CCPA. On August 1, 2002, this Court issued a decision in a consolidated appeal raising several issues related to the forced-sale proceeding. *R.R. Ventures, Inc. v. Surface Transp. Bd.*, 299 F.3d 523 (6th Cir.2002) (*"Railroad Ventures, Inc."*). That appeal involved six separate petitions for review filed by RVI, as well as three filed by other parties.

The instant appeal concerns two issues raised by the Board's order of November 8, 2001. *R.R. Ventures, Inc.-Abandonment Exemption–Between Youngstown, OH, & Darlington, PA, in Mahoning & Columbiana Counties, OH, & Beaver County, PA*, STB Docket No. AB–556 (Sub–No. 2X), 2001 WL 1396719 (Service Date Nov. 9, 2001) ("November Decision").

## II. Modification of Escrow Arrangement

■ First, RVI failed to maintain the rail line in operable condition during the time that it owned the line. CCPA thus requested that the parties be required to escrow $375,000 of the sale proceeds as a condition of the forced sale, in order to ensure that RVI paid to restore the line to operable condition. In an October 2000 decision, the Board imposed the escrow condition. This Court affirmed the escrow condition on appeal. *Railroad Ventures, Inc.*, 299 F.3d at 559–60.

The parties reached an agreement by which the escrow funds would be placed with James Davis, an attorney, and be disbursed by him, subject to oversight and written consent of the Ohio Rail Development Commission ("ORDC"). The escrow arrangement soon unraveled, however, and RVI took several actions that frustrated the release of funds. Davis resigned prior to the disbursement of any of the escrowed funds, explaining that the transaction was occupying too much of his time, and that he had not anticipated being involved in what he referred to as "an explosive situa-

---

* The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

tion which will most likely end up in further litigation."

The parties could not agree on a replacement escrow agent and also disagreed as to whether certain disbursements were to be made from the escrowed funds. Because of the disagreements, CCPA asked the Board to establish a procedure affording RVI time to identify specific repairs or restorations which it considered not to be covered by the escrow arrangement, and providing CCPA additional time to respond. The Board then would decide whether a particular repair was covered and, if so, order a new escrow agent to disburse the funds.

In its November Decision, the Board considered this request. The Board explained that it had "ordered the establishment of the escrow account so that an independent manager would conserve the account's assets, ensure timely payment of funds to CCPA, and surrender any unused funds to RVI after the repairs were made." November Decision, at *5. According to the Board, RVI's position and actions had not furthered these goals, "but rather have frustrated the orderly administration of these funds and have prevented disbursement of funds from the account for legitimate expenditures that were meant to be covered by the fund." *Id.* The Board explained how RVI had attempted to frustrate the disbursement of funds, and how the vigorous disagreements between the parties led to Davis's resignation. The Board then ordered transfer of the funds directly to CCPA:

> Under these circumstances, we do not believe that finding a suitable replacement escrow agent would be an easy task. Nor do we believe that it is necessary to do so. Rather, we now conclude that the best way to ensure that RVI does not interfere further with the orderly administration of these funds and

the accomplishment of our original objectives in setting up the fund is to allow CCPA to manage the funds directly. Accordingly, we will direct Mr. Davis (the escrow agent who resigned) to make a lump-sum, one-time payment of the entire amount in the escrow account to CCPA immediately.

*Id.* The Board further instructed that:

> CCPA shall: (1) keep these funds in a separate account; (2) keep account of all funds expended for repairs, including evidence of competitive bids for each repair project (although we will allow for separate repairs to be grouped for the bidding process); and (3) complete all repairs for which escrow funds are to be used within 270 days from the effective date of this decision.

*Id.* Finally, the Board stated that "Funds expended in this fashion shall be subject to challenge by RVI or its affiliates only for fraud." *Id.*

RVI now appeals, arguing that the Board violated due process and fiduciary principles by allowing CCPA, rather than a neutral decisionmaker, to determine the proper use of the escrowed funds and by limiting any challenge to escrow expenditures by RVI to those based on fraud. The Board responds by arguing that this issue is not ripe for appellate review.

We agree with the Board that this issue is not ripe for our review. It is not clear that the Board has foreclosed RVI's opportunity to challenge disbursements of the escrowed funds for anything other than fraud. A petition currently pending before the Board challenges the disbursement of funds and is not based on fraud. Given the speculative nature of RVI's claim and the fact that a petition for review is currently pending before the Board, consideration of the issue by this Court is inappropriate at this time. Once the Board has issued a decision upon RVI's pending petition, RVI

will have the opportunity to appeal that decision to this Court. Not until then will the record be such that this Court can properly determine whether the procedures established by the Board afforded RVI due process. Therefore, we dismiss this claim as unripe.

### III. Additional License Agreements

█ In setting the purchase price for the forced sale of the line, the Board adjusted the price to account for the fact that RVI's affiliate, Venture Properties of Boardman, Inc. ("VPB"), would continue to receive income from 156 agreements entered into between RVI and VPB. These 156 agreements were specifically included in a list that CCPA submitted to the Board for purposes of determining the purchase price of the line. When the Board ordered the sale, it "recognized that there were other transfers of interests in this rail line from RVI to VPB that had not been specifically identified," and declared those interests void. November Decision, at *3. As the Board explained in its November decision, "in that way, we would be able to assure that CCPA would receive the full property we valued (and for which it was paying)." *Id.*

After closing of the sale, another dispute arose concerning the ownership interest in additional licence agreements entered into by RVI, which were not among the 156 in the list submitted to the Board. For the first time, RVI produced a master list of agreements that included additional agreements of which the Board had not been made aware. Notwithstanding the Board's prior orders, RVI took the position that it retained an interest in the additional agreements on the new list. CCPA disagreed, and filed a response objecting to the newly disclosed list. CCPA noted that even though RVI had been aware of the appraiser's compilation of the revenue-producing agreements since December 8, 1999 and the Board had relied on that list in determining which interests would be exempt from transfer, "RVI never before disputed the completeness of that list of agreements." Furthermore, CCPA pointed out that the additional agreements were included in the price paid to RVI as part of the transfer of the line. CCPA requested that the Board clarify the ownership interests in the license agreements on the new list.

In its November Decision, the Board concluded that CCPA had acquired the interests in the additional license agreements when it purchased the line. The Board clarified that its prior decision did not affect the validity of these agreements, but meant that CCPA, and not VPB, was the party that had the right to receive income from these interests. VPB held the rights or interests only in four leases that were listed in CCPA's original evidentiary submission.

RVI now argues that the forced transfer of the additional license agreements from VPB to CCPA without any compensation to RVI violates the Fifth Amendment. Since ninety-six agreements were not valued by CCPA's appraiser, and RVI has not been allowed to retain and transfer them, RVI contends that it has been denied just compensation for these agreements and that its Fifth Amendment rights under the Takings Clause have been violated.

We disagree. In *Railroad Ventures, Inc.*, this Court held that CCPA was entitled to acquire a fee simple interest in the property. 299 F.3d at 554–55. In addition, this Court approved the Board's valuation of the fee simple interest and concluded that RVI was justly compensated for the forced sale of its property. *Id.* at 556, 558–59. The fact that there are additional license agreements that were not considered in the valuation of the property

does not entitle RVI to additional compensation. First, RVI failed to protect its property interests when it had the chance to do so. RVI has known since October 1999 that CCPA intended to acquire all interests in the line except for the revenues generated by those 156 pre-existing licenses and agreements specifically evaluated and identified in the valuation. RVI made no attempt to protect its property interests by pointing out that there were ninety-six additional license agreements until it revealed them in May 2001. Having failed to inform the Board in a timely fashion that there were additional license agreements not reflected in the valuation, RVI cannot now complain that it was not adequately compensated by the valuation.

Moreover, no additional compensation is due because RVI has been compensated for a fee simple interest in the land. Any additional license agreements represent a burden on the land, which the Board would have taken into account. If the Board allowed RVI to retain its interest in the additional agreements, it would have reduced the purchase price further to reflect this burden on the property. Under these circumstances, there is no unconstitutional taking in this case, and the Board's November Decision should be affirmed.

## IV. Conclusion

For the reasons stated above, we find that RVI's challenge to the modification of the escrow arrangement is not ripe for appeal. We affirm the Board's November 8, 2001 order with respect to the ninety-six additional license agreements.